# BUFFALO SUPERIOR COURT.

## Stephen O. Barnum, assignee, &c., agt. James Farthing and others.

It is well settled that a transfer of lands made by the *husband to the wife*, through the medium of a third person, vests, if fairly and honestly made, the title to them in the *wife*.

The validity of such a transfer must be tested by the same circumstances of good faith, solvency and intent, by which a voluntary conveyance made before the passage of the married woman's act, by a husband for the declared purpose of providing for his wife out of his estate, would have been tested.

Where it is found, as a matter of fact, that such a transfer of the lands was made by the husband in good faith, without any intent to defraud, and as a just provision for his wife out of his estate, the wife, by virtue of the act of 1860, holds the same to her sole and separate use free from the control of her husband, or liability for his debts.

Whether the married woman's act has abrogated the technical rule of the common law (resulting from the artificial theory that husband and wife are one person), that the husband cannot convey directly to the wife, nor the wife to the husband, there seems to be some conflict of judicial opinion upon that point. *(See Rawson agt. Penn. R.R. Co., 2 Abb. N. S., 220; Little agt. Willetts, 37 How., 481.)*

*Trial Term, March,* 1870.

On the 24th day of July, 1868, the plaintiff recovered a judgment against James Farthing for $31,931 21, and brings this action to collect said judgment out of certain property which the said James Farthing had theretofore conveyed to one Weber, and which Weber had conveyed to Christiana Farthing, wife of said James, and also out of certain other property which was purchased, after the recovery of said judgment, by said Christiana and her two daughters, Elizabeth J. Weber and Adelia J. Lawson, the plaintiff alleging that such purchase was made with money belonging to said James and that all of said conveyances

are fraudulent and void as to the creditors of James Far-
thing.

The cause was tried before Hon. JOSEPH G. MASTEN, jus-
tice, without a jury, on the 25th day of May, 1870, who
found the following facts and conclusions of law, to wit:

This action having been tried by the court without a
jury, the following facts are found and decided.

The defendant, James Farthing, is of the age of 53 years.
He came to the city of Buffalo in the year 1837, without
any property, has resided in said city or its vicinity ever
since. During the first five or six months after he came to
said city, he worked out by the month, and then went into
the business of a drover of cattle, buying and selling them
and continued in that business down to November, 1867.

During all that time the cattle business was his chief
business, and from its commencement down to the summer
of 1867, he made money in the business. The defendant
Christiana Farthing is the wife of the defendant James
Farthing. They were married about thirty-two years ago,
and after he had engaged in the cattle business. About
twenty years ago he opened a butcher's shop in said city
of Buffalo, and carried it on for ten or twelve years. He
gave but little attention to the shop, but devoted most of
his time and attention to the cattle business; the butcher
shop being managed by his wife and others; he gave up
that business about eight years ago.

The defendants Elizabeth J. Weber and Adelia J. Lawson
are the children of said James and Christiana Farthing, and
the defendant John B. Weber is the husband of said Eliza-
beth J.; the said Adelia J. is the wife of William W. Law-
son, to whom she was married in March, 1865. On the
30th day of April, A.D. 1866, at the time of the convey-
ances from the said James Farthing to the said John B.
Weber, and from the said John B. Weber and his wife to
the said Christiana Farthing, set forth in the complaint, of
the lands in said complaint described, and by said deeds

conveyed, the said James Farthing did not owe any debts, and was worth about sixty thousand dollars, which he had chiefly made in the said cattle business; his property then consisted of the said lands described in the said deeds; said lands were free of incumbrances and were worth about twenty-five thousand dollars, and were all the real estate owned by said James Farthing. He also had thirty thousand dollars in money and other personal property of the value of three thousand or four thousand dollars.

The said deeds of conveyance were made and delivered for the purpose of making an advancement or provision by said James Farthing for his said wife, in the hope and expectation of continuing his said business successfully, and were made in good faith and without any fraudulent intent.

The said John B. Weber was simply the medium through whom to pass the title of said lands from said James to said Christiana.

The said lands consist of a lot in the city of Buffalo, upon which the butchering business was formerly carried on, and a farm of 109 acres near said city; the said city lot ever since said conveyance to said Christiana has been occupied by her tenants, and from whom she has received the rent of it. In the spring of 1867 she moved upon said farm and has ever since resided upon it, and carried on the dairy business herself.

The said James Farthing continued the said cattle business successfully until in the summer of 1867, when he began to meet with losses, and finally failed on the first day of November, A. D. 1867.

The plaintiff recovered a judgment in this court against the said James Farthing and one John Simmons, on the 24th day of July, A. D. 1868, for $31,931 21-100; the debt on which said judgment was recovered was contracted on the 29th day of October, A. D. 1867, and on the same day a transcript of said judgment was filed and judgment docketed thereon in the office of the clerk of the county of

Erie, and an execution issued thereon to the sheriff of said county, which execution was returned wholly unsatisfied before the commencement of this action, and said judgment is wholly unpaid.

The property conveyed to said Christiana Farthing, as aforesaid, was a suitable and proper advancement to and provision for the said defendant, Christiana Farthing.

On or about the twenty-fifth day of March, A.D. 1868, the said defendants, Christiana Farthing, Elizabeth J. Weber, and Adelia J. Lawson, purchased of one Chandler J. Wells, the premises which were conveyed to them by said Wells, by the deeds for that purpose mentioned and described in the said complaint; this purchase was made by them for their own benefit; they paid part of the purchase money in cash, of their own funds, and secured the payment of the balance by their mortgage upon said farm; the money paid by the said Christiana, was raised by her by pledge of the rents of the said butcher shop lot; the money paid by the said Elizabeth J. Weber, was borrowed by her, and the money paid by said Adelia J. Lawson, was given to her by her husband.

The said James Farting had, and has no interest in the purchase of said farm, or in the money paid therefor to the said Wells, or in said farm itself, and that the said deed from said Wells, to said Christiana Farthing, was not made with intent to hinder delay or defraud the creditors of the said James Farthing. That said James Farthing owns certain personal property aside from the real property herein mentioned.

And, as conclusions of law upon the foregoing facts, it is found and decided,

That the said conveyances by said James Farthing to said John B. Weber, and by said John B. Weber and wife to said Christiana Farthing, of the lands and premises therein described, vested the fee of said lands and premises in said Christiana Farthing, and that thereby the said lands

and premises, and the rents issues, and proceeds of all thereof, notwithstanding her marriage, became, were, and are her sole and separate property, not subject to the interference or control of her husband, or liable for his debts.

That the said defendants, Christiana Farthing, Elizabeth J. Weber, and Adelia J. Lawson, by virtue of the conveyance to them, by the said Chandler J. Wells, became, were and are the sole owners of the lands and premises thereby conveyed, not subject to the interference or control of their husbands, nor liable for the debts of the said James Farthing.

That the said James Farthing has no right title, interest, or estate of, in or to any of said lands or premises which is liabe for his debts, or on which the said judgment in favor of the said plaintiff against the said James Farthing and John Simmons is a lien.

That the complaint herein should be dismissed as against the said defendants, Christiana Farthing, John B. Weber, and Elizabeth J. Weber, his wife, and Adelia J. Lawson, and that they should recover of said plaintiff their costs and disbursements of this action.

That the plaintiff have judgment herein against the said defendant, James Farthing, for the appointment of a receiver of the property, estate and effects of the said James Farthing, with costs to be paid by such receiver out of any property or assets of the said James Farthing, which may come into the possession of the said receiver.

ELIJAH FORD *and* JOHN GANSON, *for plaintiff.*
GEORGE WADSWORTH *and* HIRAM C. DAY, *for defendants.*

JOHN GANSON, *counsel for plaintiff, cites:*

*Little* agt. *Willets,* 37 *How.,* 481 ; 1 *C. E. Green,* 65 ; *Hollister Bank* agt. *Vail,* 15 *N. Y.,* 593 ; *Case* agt. *Phelps,*

39 *N. Y.*, 164 ; 3 *Gray*, 398 ; 5 *Maddock*, 248 ; *Wood* agt. *Robinson*, 22 *N. Y.*, 564, *and Bank of Attica* agt. *Niles, decided in this court in* 1860, *but not reported; also Laws of* 1848, *chap.*, 200, *and Laws of* 1849, *chap.*, 375.

GEORGE WADSWORTH, *counsel for defendants, cites:*

*Chap.* 200, *Laws of* 1848 ; *chap.* 375 *Laws of* 1849 ; *chap.* 90, *Laws of* 1860 ; *chap.* 172, *Laws of* 1862 ; *Tyler on Infancy and Coverture,* § 470, *p.* 656; *Rawson* agt. *Penn. Cent. R.R. Co.*, 2 *Abb., N. S.,* 220 ; *McIlvaine* agt. *Kadel,* 30 *How.*, 193 ; *Ransom* agt. *Nichols,* 22 *N. Y.,* 110 ; *Wolf* agt. *Scroggs,* 2 *Keyes,* 491 ; *Phillips* agt. *Wooster,* 36 *N. Y.,* 412; *Vrooman* agt. *Griffiths,* 1 *Keyes,* 53 ; *Kluendar* agt. *Lynch,* 4 *Keyes,* 361 ; *Lockwood* agt. *Collin,* 4 *Robt.*, 129 ; *Wilbur* agt. *Fradenburgh,* 52 *Barb.*, 474; *Knapp* agt. *Smith,* 27 *N. Y.,* 277; *Gage* agt. *Dauchy,* 34 *N. Y.,* 293; *Thurber* agt. *Townsend,* 22 *N. Y.,* 517.

MASTEN, J.—The principal questions in this case are, 1, Is the conveyance of the lands made about the first day of May, 1866, by James Farthing, the husband (through the medium of Weber,) to Christiana Farthing, the wife of said James, valid?

2. If valid, what is the nature or quality of the estate which she took by that conveyance?

1. The validity of the conveyance is not affected by the married woman's act. Before that act, a married woman could take property by descent, devise, bequest, gift and grant, but on receiving property, if personal, it immediately became the property of the husband, if real estate, while the fee vested in the wife, the husband took an estate in it, and was entitled to the possession of it and its rents, issues and profits.

The object of the married woman's act is, to change the quality of the estate which a married woman may take by

enabling her to take and hold personal and real property as her sole and separate property free from the interference or control of her husband, or liability for his debts.

It is not necessary to determine whether the married woman's act has abrogated the technical rule of the common law, (resulting from the artificial theory, that husband and wife are one person,) that the husband cannot convey directly to the wife, nor the wife to the husband. There seems to be some conflict of judicial opinion on that point. *(Rawson* agt. *Penn. R.R. Co.,* 2 *Abb. N. S.,* 220; *Little* agt. *Willetts,* 37 *How.,* 481.)

It is so well settled that it may be said to be elementary, that a transfer of lands made by the husband to the wife through the medium of a third person, in the manner in which the transfer under consideration was made, vests, if fairly and honestly made, the title of them in the wife.

The validity of the transfer under consideration must, therefore, be tested by the same circumstances of good faith, solvency and intent, by which a voluntary conveyance made before the passage of the married woman's act by a husband for the declared purpose of providing for his wife out of his estate, would have been tested.

I am convinced as matter of fact, that the transfer of the land was made by Farthing, the husband in good faith, without any intent to defraud, and as a just provision for his for his wife out of his estate.

The husband was fifty-three years of age; he had been married twenty-eight years; his two children (two daughters) were married; he was engaged in a prosperous business which he had followed for twenty-eight years, and in which he had accumulated about all the property he possessed; he intended to continue his business, and was confident that the success of the past would attend him in the future; he possessed lands of the value of $25,000, had $30,000 in money, and some few thousand dollars of other personal property, and was entirely out of debt, and he gave to his

wife that portion of his estate (his land) which was the least available to him in his business, but most likely to secure a permanent provision for her.

It was said that the business in which the husband was engaged, was hazardous, risky. It is quite apparent that all that was meant by these expressions is, that the market price of cattle was variable.

I hold the transfer of the lands valid.

2. This brings me to consider the quality of the estate of the wife in the lands transferred to her, and thus involves a consideration of the married woman's acts.

In the case of *Bank of Attica* agt. *Niles*, we held that under the act of 1849, the husband had, at law, an estate in lands conveyed by him, through a medium to his wife, and the right to the possession of them during their joint lives. That act enabled the wife to hold lands to her sole and separate use free from her husband, &c., which came to her by gift, grant, &c., from any person " other than her husband," leaving the nature and quality of her estate in those which came to her by gift from her husband, to be determined by the rules of law or equity, in force at the time of the passage of that act.

The supreme court in general term, in this district has made the same ruling.

The provisions of the act of 1849, enabling a married woman to hold property to her sole and separate use, which came to her from . others, were general, and excepted only that which came to her from her husband. I think, that the act of 1860, removed that exception, and enables a married woman to hold lands to her sole and separate use, free from the control of her husband, or liability for his debts, which since the passage of that act have, or may fairly and honestly come to her from her husband, in the manner and form sanctioned by law.

The legislation of this state concerning the rights and liabilities of husband and wife, has been progressive. Hus-

band and wife are no longer in this state one person in the law, in respect to the rights of property, the wages of labor and responsibility for each others acts, but two separate and distinct persons.

The plain intention of the act of 1860, was to enlarge the capacity of married women, and to enable them to hold to their sole and separate use, &c., property acquired in a manner which would, under the law as it then was, be subject to the control of the husband, and liable for his debts. The first section of the act of 1860, divides the property of a married woman into four classes, which it declares shall "notwithstanding her marriage, be and remain her sole and separate property, &c."

1. "The property both real and personal, which any married woman *now* owns is her sole and separate property." This protects the wife in the enjoyment of that which was her sole and separate property at the time of the passage of the act.

2. "That which comes to her by descent, devise, bequest, gift or grant." That is, that which shall thereafter come to her by descent, &c.

There is no limitation as to the persons from whom it must come. From the progressive character of the act, the construction of the section, and the clear and explicit language used, I am of the opinion, that the intention was to embrace the husband.

3. "That which she *acquires* by her trade, business, labor or services, carried on or performed on her sole or separate account;" under the previous statutes, property thus acquired could not be the sole and separate property of the wife. The provision shows the spirit of the act.

4. "That which a woman married in this state, owns at the time of her marriage."

I hold that the transfer of the lands by the defendant, Farthing, to his wife, through the medium of Weber, vested them in her as her sole and separate property, free from the

control of the husband, or liability for his subsequently contracted debts.

The evidence fails to show that the defendant, James Farthing, has or had any interest in the farm purchased of Wells.

There must be judgment for all the defendants, with costs, except the defendant, James Farthing; as to the defendant, James Farthing the plaintiff, must have judgment appointing a receiver, &c., with costs to be paid out of any property which may come to the hands of the receiver.